884 F.2d 423
 58 USLW 2154, 11 Employee Benefits Ca 2053
 Evelyn SILVERA; Stephen E. Silvera, Plaintiffs-Appellants,
v.
The MUTUAL LIFE INS. COMPANY OF NEW YORK; Aurora Nido, and
Does 1 through 30, Defendants-Appellees.
 No. 88-2594.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 5, 1989.
Decided Aug. 29, 1989.
 
 Lawrence A. Puritz, Matthews, Fuqua & Puritz, Chico, Cal., for plaintiffs-appellants.
 Elliot L. Bien, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before POOLE, REINHARDT and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We are called upon to determine whether a municipal employer established or maintained an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001-1461, when it purchased a group benefits insurance policy for its employees. We conclude that it did in this case. Since a "governmental plan" is exempt from ERISA, we must reverse the district court.
 
 
 2
 * On April 1, 1985, the Mutual Life Insurance Company of New York ("MONY") issued a group benefits insurance policy to the City of Oroville, California ("City"). Stephen E. Silvera, a City employee, and his wife, Evelyn ("appellants") were beneficiaries under the policy. The appellants submitted several claims to MONY arising out of the birth and care of their daughter. MONY rejected some of those claims, totaling approximately $11,500.
 
 
 3
 On September 8, 1987, the appellants filed a complaint for tortious breach of contract in California state court, asserting seven causes of action against MONY. MONY removed the action to federal district court, contending that the health plan in question was within the scope of the ERISA, and that federal question jurisdiction therefore existed under 28 U.S.C. Sec. 1331. MONY then moved to dismiss the appellants' complaint, arguing that ERISA preempted state law in this situation and that the complaint therefore failed to state a claim upon which relief could be granted.
 
 
 4
 Following a hearing with oral argument, the district court granted MONY's motion to dismiss, but allowed the appellants thirty days in which to file an amended complaint. By stipulation of the parties, the appellants' pending motion to remand was taken off calendar without prejudice, and the appellants filed an amended complaint.
 
 
 5
 On March 29, 1988, the district court granted the appellants' motion to certify the dismissal of their state law claims as a final judgment under Fed.R.Civ.P. 54(b), and a certificate to that effect was filed on April 20, 1988. The court entered judgment the following day, and the appellants filed this timely appeal.
 
 II
 
 6
 Although the parties to this appeal have presented several issues for resolution, this case turns solely on the question whether ERISA governs the MONY insurance plan provided by City to its employees. In order to answer that question, we must determine whether the district court was correct in its conclusion that the MONY plan was not a "governmental plan."
 
 
 7
 ERISA was enacted to protect, inter alia, "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. Sec. 1001(b). "Employee benefit plans" are either "employee welfare benefit plans" or "employee pension benefit plans" or both. Massachusetts v. Morash, --- U.S. ----, 109 S.Ct. 1668, 1672, 104 L.Ed.2d 98 (1989). An employee welfare benefit plan, which is at issue here, is defined as
 
 
 8
 any plan, fund, or program which ... is ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....
 
 
 9
 29 U.S.C. Sec. 1002(1). These plans consist of five elements:
 
 
 10
 (1) a "plan, fund or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to the participants or their beneficiaries.
 
 
 11
 Kanne v. Connecticut Gen. Life Ins. Co., 867 F.2d 489, 492 (9th Cir.1988) (per curiam) (as amended) (quoting Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir.1982) (en banc)).
 
 
 12
 In order to provide the widest possible protection to all such plans, ERISA contains a preemption clause which states, in relevant part, that "this chapter shall supersede any and all State laws insofar as they ... relate to any employee benefit plan...." 29 U.S.C. Sec. 1144(a). The Supreme Court has indicated that ERISA's preemption of state laws should be construed broadly, Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46, 107 S.Ct. 1549, 1551-52, 95 L.Ed.2d 39 (1987), and this court has stated that such preemption "extends to state common-law causes of action as well as regulatory laws." Scott v. Gulf Oil Corp., 754 F.2d 1499, 1502 (9th Cir.1985).
 
 
 13
 One of the narrow exceptions to this broad coverage is that of the so-called "governmental plan." A governmental plan is defined, in relevant part, as "a plan established or maintained for its employees ... by the government of any State or political subdivision thereof." 29 U.S.C. Sec. 1002(32).[1] All such plans are exempt from ERISA coverage. 29 U.S.C. Sec. 1003(b)(1). The parties' dispute centers on whether the employee welfare benefit plan in question is a governmental plan.
 
 III
 
 14
 MONY's position may be summarized as follows: The plan it sold to City could not have been a governmental plan because (1) City's taxing authority was not involved (i.e., City did not directly fund or otherwise underwrite the plan); and (2) it was MONY, not City, who designed and set up the plan, administered it on behalf of the employees, and was ultimately liable for the payment of benefits. MONY then cites two cases in support of the above, Rose v. Long Island R.R. Pension Plan, 828 F.2d 910 (2d Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1112, 99 L.Ed.2d 273 (1988), and Feinstein v. Lewis, 477 F.Supp. 1256 (S.D.N.Y.1979), aff'd, 622 F.2d 573 (2d Cir.1980). This position lacks merit.
 
 
 15
 First, neither of the two cases cited unequivocally supports MONY's position, particularly with respect to the question whether a governmental plan can be established or maintained without requiring a governmental entity to set up, administer, and directly fund the plan. See, e.g., Rose, 828 F.2d at 920 ("Congress, in exempting governmental plans, was concerned more with the governmental nature of public employees and public employers than with the details of how a plan was established or maintained") (quoting Feinstein, 477 F.Supp. at 1262).
 
 
 16
 Second, the "taxing authority" argument cannot be pushed very far. While the record does not indicate the source of City's revenues, it is reasonably safe to assume that City paid the premiums for the MONY plan by means of revenues derived from its taxing authority, i.e., the money needed to pay for the plan was obtained in the same way it would have been raised had City set up a self-funded plan, with taxes. Similarly, MONY's contention that, in the event of MONY's failure, City would not have been responsible for providing the contracted-for benefits, while strictly true, belies the realities of politics. As the court noted in Rose, it would be unrealistic to assume that losses incurred by a plan covering public employees would not ultimately be borne, at least in part, by the taxpaying public. Rose, 828 F.2d at 918.
 
 
 17
 Third, MONY's argument ignores the criteria to be considered when determining whether an employer has "established or maintained" a plan. The Department of Labor promulgated 29 C.F.R. Sec. 2510.3-1(j) to clarify whether, and under what circumstances, an employer's adoption of a group insurance plan would constitute the "establishment" of a plan:
 
 
 18
 [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
 
 
 19
 (1) No contributions are made by an employer or employee organization;
 
 
 20
 (2) Participation [in] the program is completely voluntary for employees or members;
 
 
 21
 (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer.
 
 
 22
 As this court noted in Kanne, behavior inconsistent with any one of the above criteria would constitute evidence of the establishment of a plan. 867 F.2d at 492. Cf. Otto v. Variable Annuity Life Ins. Co., 814 F.2d 1127, 1135 (7th Cir.1986) (where employer's sole function was to present different insurers' plans to employees and collect and remit premiums, employer did not "establish or maintain" plan), cert. denied, --- U.S. ----, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988).
 
 
 23
 The undisputed facts are that City presented the MONY plan to its employees not on a "take it or leave it" basis, but on a "take it or take it" basis. City not only endorsed the plan, it automatically provided the plan to all its employees. Moreover, City did not simply collect premium payments from its employees and pass them on to MONY; City paid the premiums itself directly to MONY. In short, City's behavior was inconsistent with all of the three criteria cited above. Thus, a straightforward application of 29 C.F.R. Sec. 2510.3-1(j) to the facts of this case forces the conclusion that City did in fact "establish or maintain" an employee welfare benefit plan and, since City is a political subdivision of a state, that plan qualified as a governmental plan under 29 U.S.C. Sec. 1002(32) and was therefore exempt from ERISA coverage pursuant to 29 U.S.C. Sec. 1003(b)(1).
 
 
 24
 Fourth, MONY's arguments ignore the express wording of ERISA's definition of an employee welfare benefit plan. As noted above, such plans may be "established or maintained by an employer ... through the purchase of insurance...." 29 U.S.C. Sec. 1002(1) (emphasis added). It cannot be disputed that the appellant's employer purchased the insurance plan in question.
 
 
 25
 While our research failed to disclose any reported decisions squarely on point, at least one other court has held, in an unpublished disposition, that a municipality's purchase of an insurance plan offered and administered by a private insurer constituted the establishment or maintenance of a governmental plan exempt from ERISA coverage. See Gordon v. Bay County Metro. Transit Auth., 860 F.2d 1079 (Table) (6th Cir.1988).[2] See also, generally, Dyer v. Investors Life Ins. Co. of North America, 728 S.W.2d 478, 480 (Tex.App.1987) (administration of state employee retirement plan by private insurer did not deprive plan of "governmental" character exempt from ERISA).
 
 
 26
 MONY's argument that the "established or maintained" language of 29 U.S.C. Sec. 1002(32) should somehow be read differently from the identical language contained in the same definitional section[3] is neither supported by any citations to published authority directly on point, nor to be found in the statute's legislative history.
 
 
 27
 It is clear that, had City set up and administered its own employee benefit plan, underwritten by City and funded entirely by City tax revenues, such would have resulted in the establishment and maintenance of a governmental plan. Cf. Rose, 828 F.2d at 918-20. It is equally clear that, had City merely presented its employees with a smorgasbord of benefit plans offered by different organizations, including MONY, and, without endorsing any one of those plans, permitted its employees to select and pay for the plan or plans of their choice, such a course of action would not have constituted the establishment or maintenance of a governmental plan. Cf. Credit Managers Ass'n of So. California v. Kennesaw Life & Accident Ins. Co., 809 F.2d 617, 625 (9th Cir.1987). This case falls somewhere along the spectrum between these two extremes.
 
 
 28
 Here, a governmental entity purchased a plan on behalf of governmental employees, and by doing so simply delegated a task it otherwise would have undertaken had it chosen to set up a self-funded plan. To that extent, MONY simply stepped into the employer's shoes and, for a fee, assisted in the employer's task. Cf. Kanne, 867 F.2d at 493 ("The term 'employer' means any person acting ... in the interest of an employer....") (quoting 29 U.S.C. Sec. 1002(5)) (emphasis supplied).
 
 IV
 
 29
 Congress may well have intended, contrary to the express language of the Act, to keep this kind of plan within ERISA's grasp. See, e.g., Rose, 828 F.2d at 914 (survey of ERISA's legislative history with respect to governmental plan exemption). Nevertheless, in light of the above analysis and what Congress actually said in ERISA, we conclude that the plan in question was a governmental plan and thus exempt.
 
 
 30
 Accordingly, and for the reasons set forth above, we reverse the decision of the district court. Unless another basis for federal jurisdiction can be asserted, the district court shall remand the case to state court.
 
 
 31
 REVERSED.
 
 
 
 [1]
 The parties do not dispute that City is a "political subdivision" of California
 
 
 [2]
 Under Sixth Circuit Rules, and contrary to Ninth Circuit Rule 36-3, unpublished opinions may be cited as authority
 
 
 [3]
 See, e.g., 29 U.S.C. Secs. 1002(1) ("welfare plan"); 1002(2)(A) ("pension plan"); 1002(16)(B) ("plan sponsor"); 1002(40)(A) ("multiple employer welfare arrangement")