**Judith Leigh KENDALL, Plaintiff,**

v.

**STANDARD INSURANCE COMPANY, Defendant.**

**No. CIV.S–97–1395WBS/JFM.**

United States District Court, E.D. California.

Aug. 14, 1998.

---

## MEMORANDUM AND ORDER

SHUBB, Chief Judge.

Defendant Standard Insurance Company moves for summary adjudication, arguing that plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Fed.R.Civ.P. 56(b).

### Background

Plaintiff Judith Leigh Kendall was a secretary with the Joint Powers Insurance Authority ("JPIA"), an entity associated with the Association of California Water Agencies ("ACWA"). ACWA is a private, non-profit mutual benefit corporation devoted to California water issues. ACWA is comprised of over 435 public water agencies, including municipal water districts, county water districts, irrigation districts, and other special agencies with water-related functions. ACWA also includes affiliate members, associate members, and individual members, many of which are private entities such as law firms. JPIA is a related organization that provides various insurance services solely to the public agencies within ACWA.

In 1986, Standard issued a long-term disability policy (the "Plan Policy" or "ACWA Plan") to ACWA. *See* Burch Decl., Ex. 1. ACWA obtained the policy to insure certain employees and employees of its members as part of an employee benefits plan. The employer pays the entire premium and the employee pays nothing. *Id.* at 103. Standard is the Plan Policy's claim administrator. Private members of ACWA may participate in the ACWA Plan. By amendments to the ACWA Plan, JPIA, plaintiff's employer, was allowed to participate.

According to the Complaint, Kendall became totally disabled in a car accident in August of 1989. Plaintiff filed a claim for long-term benefits in November of 1989, and Standard paid benefits until April of 1997 when Standard ceased payments, apparently due to more recent medical examinations. In July of 1997, Kendall filed this diversity suit, alleging two state law causes of action: bad faith and breach of contract. Both claims seek benefits allegedly due under the Plan Policy and various damages. By the

Douglas K. DeVries, Mart and DeVries, Sacramento, CA, for Plaintiff.

Shawn Everett Hanson, Sacramento, CA, Sara Christian Holman, Pillsbury Madison and Sutro LLP, San Francisco, CA, for Defendant.

parties' stipulation, the court ordered discovery stayed pending resolution of the ERISA preemption issue.

## Analysis

### 1. Standard of Review

Upon a showing that there is no genuine issue of material fact as to particular claims, the court may grant summary judgment upon all or any part thereof. Fed.R.Civ.P. 56(a) & (b). Moreover, the court may ascertain which issues are not in controversy and order those issues deemed established for trial. Fed.R.Civ.P. 56(d). Summary judgment is appropriate if the record, read in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 2. ERISA Preemption

In 1974, Congress passed ERISA, which federalized much of employee benefit law. To insure uniformity and consistency, Congress included broad preemption provisions. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44–47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). ERISA preemption is "conspicuous for its breadth"—its "deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern." *Ingersoll Rand Co.,* 498 U.S. at 138, 111 S.Ct. 478 (internal quotations and citations omitted). "In particular, ERISA preempts state law causes of action that offer remedies for the violation of rights expressly guaranteed by ERISA and exclusively enforced by ERISA's civil enforcement mechanism." *Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124, 1130 (9th Cir.1992). However, certain types of plans have been exempted from ERISA coverage. *See* 29 U.S.C. § 1003(b) (listing ERISA exemptions)

### 3. The ACWA Plan is an ERISA Plan

██ The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988).

██ An ERISA "employee welfare benefit plan" is: (1) a plan, fund or program; (2) established or maintained; (3) by an employer or by an employee organization, or by both; (4) for the purpose of providing medical, surgical, hospital, or sickness benefits; (5) to participants or their beneficiaries. *Steen v. John Hancock Mut. Life Ins. Co.,* 106 F.3d 904, 917 (9th Cir.1997) (citations omitted); *see also* 29 U.S.C. § 1002(1). It is undisputed that the ACWA Plan is a plan established or maintained by ACWA for the purposes of providing medical benefits to Plan participants or their beneficiaries. Thus, the only issue is whether ACWA qualifies as an "employer" under ERISA.

██ An "employer" is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). Not all groups or associations of employers qualify as ERISA "employers," however. To be an "employer" under ERISA, there must be a bona fide organizational relationship among members of a group, and that relationship must be more than a mere association for the purpose of qualifying for benefits. *Moideen v. Gillespie,* 55 F.3d 1478, 1481 (9th Cir.1995)(citing *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir. 1987)). ACWA is an organization whose members share a common concern for water issues. *See* Holman Decl., Ex 3–4. Unlike *Credit Managers,* where the employers were heterogenous and unrelated, and unlike *Moideen* where the organization that was open to "any business" in "any industry," ACWA membership revolves around mutual concerns for water issues. ACWA members thus share a "commonality of interest that forms the basis for sponsorship of an employee welfare benefit plan." *Moideen,* 55 F.3d

at 1481 (citations omitted). Because ACWA is a group acting for, or in the interest of, an employer in relation to an employee benefit plan, it is an ERISA "employer." 29 U.S.C. § 1002(5); *accord Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 916 (9th Cir.1997) (CELSOC, a trade organization of civil engineers and surveyors, is an ERISA "employer" for member employers). Accordingly, unless the ACWA Plan is excluded by one of the exceptions to ERISA coverage, the ACWA Plan is an ERISA Plan.[1]

### 4. The Governmental Plan Exception

■ Plaintiff argues that the ACWA Plan is a "governmental plan" subject to an explicit statutory exception to ERISA coverage. 29 U.S.C. § 1003(b)(1); *see Silvera v. Mutual Life Ins. Co. of New York*, 884 F.2d 423 (9th Cir.1989). "The term 'governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). "Like the term 'political subdivision,' the terms 'agency' and 'instrumentality' are not defined in ERISA, nor are there any regulations under ERISA which interpret these terms." *Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 917 (2d Cir.1987). The case law on ERISA plans that include both public and private employers is sparse.[2]

ACWA's bylaws set forth different levels of membership and the benefits that apply to each membership level. Supp. Holman Decl., Ex. 2. Full membership is limited to public districts, public agencies, or public organizations that supply water within California. Members are the only group entitled full participation, including voting. Affiliate members are nonprofit mutual water companies or other nonprofit organizations that supply water within California. They are not voting members. Associate members include private agencies and individuals that have

purposes compatible with those of full members. Associate members are also entitled to all benefits but also lack a vote. *Id.* All classes of members pay the fees that fund ACWA. ACWA's articles of incorporation do state that ACWA was incorporated as an instrumentality of political subdivisions of the State of California. However, because ERISA is a federal statute, the court must apply a federal law test to determine whether the plan qualifies as a government plan. *See Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 915 (2d Cir.1987).

■ The Department of Labor ("DOL") recently issued an advisory opinion (97–05A) in which it determined that the governmental plan exception did not apply to an analogous situation. Opinion Letter 97–05A (February 12, 1997) 1997 WL 75230. DOL issues advisory opinions on ERISA coverage questions, and because DOL is an agency that administers portions of ERISA, its opinions are entitled to substantial weight. *See Bance v. Alaska Carpenters Retirement Plan*, 829 F.2d 820, 827 (9th Cir.1987); *Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir.1991) (though not binding, Department of Labor ERISA opinion letters "carry considerable weight").

In the 97–05A opinion, DOL concluded that the Sheriff's Youth Programs of Minnesota 403(b) Annuity Program ("SYPOM") was not exempt from ERISA under the governmental plan exception, despite significant ties to a county government. Many SYPOM characteristics considered relevant by DOL parallel those of ACWA. In particular, SYPOM is a private, non-profit corporation that restricts its voting to publicly-appointed sheriffs who pay membership fees. Sheriffs voluntarily participate in the plan in a capacity unrelated to their official duties. SYPOM raises its revenues from government agencies pursuant to contracts, not from taxes or bonds. *Id.* In addition, SYPOM's day-to-day

---

1. The Department of Labor's regulatory "safe harbor" provisions, 29 C.F.R. § 2510.3–1(j), are inapplicable as ACWA endorses and promotes the Plan and ACWA members make contributions to the Plan. *See Steen*, 106 F.3d at 916–17.

2. It is clear that a governmental entity may choose to contract with a private company, such

as Standard, to manage its plan and retain the "governmental plan" exception. *Silvera*, 884 F.2d at 427. Here, however, defendant argues that the Plan is not established or maintained by a public entity or an agency or instrumentality of a public entity, not that it is excluded by virtue of being administered by a private company.

operations are controlled by an executive director.

DOL found that the governmental plan exclusion was inapplicable because the plan was established and maintained by SYPOM rather than a governmental entity. Similarly, ACWA shares many of the characteristics that DOL noted in its finding that SYPOM was not a governmental entity or instrumentality. ACWA is a voluntary private, non-profit corporation that provides full membership only to the California water-related public entities that choose to join ACWA. Only full members may vote. ACWA raises its revenue through membership fees collected from all levels of members, both public and private. In addition, ACWA's day-to-day operations are controlled by executives responsible to an executive committee and ACWA's Board of Directors. There is no indication that the public officials that may occupy these positions are acting in the official capacities in doing so. The court finds that the ACWA Plan is not materially different from the plan that DOL advised did not qualify for the governmental plan exception. Thus, the DOL opinion letter also indicates that the ACWA Plan is not subject to the governmental plan exclusion.

 In addition, application of standards set forth in other circuits indicate that ACWA is not an "instrumentality" within the meaning of ERISA. In *Shannon v. Shannon*, 965 F.2d 542, 546–48 (7th Cir.1992) the court adopted the test set forth in *NLRB v. Natural Gas Utility Dist. of Hawkins County, Tennessee*, 402 U.S. 600, 602–03, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971), to determine—under the NLRA—whether an entity is a political subdivision of a State. *Shannon*, 965 F.2d at 546–48. To satisfy the test, an entity must be either (1) created directly by

the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate. *Id.* at 548. Though that test was created to analyze a slightly different question, it is instructive in the present context.

ACWA was not created directly by the state or by a political subdivision of the state. Instead, ACWA is incorporated under the general California corporate code, not the California Government Code.[3] Plaintiff argues that the influence of the water districts is sufficient to make ACWA an instrumentality of political subdivisions of the State. However, examination of ACWA's bylaws indicates that its public agency members have only limited control over the governing Board of Directors. Though only full members of ACWA vote for the Board of Directors, the directors can apparently only be removed for missing meetings. *See Shannon*, 965 F.2d at 551 (inability of governmental entities to remove Board members is a factor in determining applicability of governmental plan exception).[4] The Board Members serve two-year terms and the Board meets bimonthly. Regular member meetings are held semiannually. Moreover, there are no requirements—such as being a representative of a public agency—for membership on the standing committees, including the "Insurance and Personnel Committee" which regularly reviews ACWA's group insurance offerings.[5] Given the relatively lengthy terms of the officers, the relatively infrequent meetings of the members, the inability of members to remove officers, and the delegation of duties to committees that may be composed of non-public agency representatives, it does not appear that ACWA is operated by individuals that are accountable

---

**3.** In contrast, JPIA is incorporated under various provisions of the California Government Code.

**4.** *See also Brock v. Chicago Zoological Society*, 820 F.2d 909, 912 (7th Cir.1987) (finding zoo officers did not owe the sort of "direct personal accountability to public official or to the general public" that would entitle the zoo to an OSHA exemption) (citation omitted).

**5.** The ACWA bylaws state: "There shall be an Insurance and Personnel Committee whose duty it shall be to review, on a regular basis, all group

insurance program offerings, make recommendations to the Board of Directors regarding annual contract renewal of all group employee benefit plans, retirement issues, ACWA sponsored deferred compensation plans and other personnel and administrative issues pertinent to the management of member agencies. The committee shall consist of at least one and no more than two individuals from each region, at least one from each region must represent an agency enrolled in multiple plan offerings through the Association." Supp. Holman Decl., Ex. 3 at A–18.

to the public entities, particularly with regard to its insurance plans.[6]

■ Perhaps most importantly, to hold, as plaintiffs argue, that the ACWA Plan is an ERISA-exempt governmental plan would permit ACWA's private members to circumvent the provisions of ERISA merely by participating in the ACWA Plan. ERISA was intended to broadly cover all private employers, particularly all private employers where abuses of the prior scheme were deemed most severe. *See Ingersoll–Rand Co.*, 498 U.S. at 138, 111 S.Ct. 478. Accordingly, if a public entity chooses to participate in a ERISA plan that includes private employers, that public entity's plan becomes subject to the provisions of ERISA. *See Livolsi v. City of New Castle*, 501 F.Supp. 1146, 1150 (W.D.Pa.1980) ("[W]hen a state or local government body chooses a private welfare benefit plan for its employees, it will subject itself to federal jurisdiction under ERISA."). As the Ninth Circuit has noted, public entities are free to set up and administer their own plans that would qualify as governmental plans, and they may even use a private entity to administer the plan. *Silvera*, 884 F.2d at 427. However, where, as here, the public entity participates in an ERISA plan that includes private participants, ERISA applies. To be entitled to the governmental plan exception—a narrow exception to ERISA coverage—a public entity must take steps to insure that the plan includes only public participants.

**5. Plaintiff's Claims "Relate to" an ERISA Plan**

■ ERISA's expansive preemption clause preempts all claims that "relate to" an ERISA plan, as ERISA's civil enforcement provisions are the exclusive vehicle for actions by ERISA plan participants and beneficiaries asserting claims for benefits. *Pilot*

Life Ins. Co.*, 481 U.S. at 52, 107 S.Ct. 1549; *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1390–91 (9th Cir.1995). The clause is given a common-sense meaning: if a cause of action is connected with or references an ERISA plan, it is preempted. *Pilot Life Ins. Co.*, 481 U.S. at 47–48, 107 S.Ct. 1549. State law claims such as plaintiff's "relate to" an ERISA plan because they seek to recover benefits allegedly due under the plan. *Crull*, 58 F.3d at 1390.[7] In fact, claims such as plaintiff's have been specifically found to have been preempted by ERISA. *See Schwartz v. FHP International Corp.*, 947 F.Supp. 1354, 1359–60 (D.Ariz.1996) (collecting cases).

In a footnote, plaintiff obliquely references (without citation) the ERISA savings clause. 29 U.S.C. § 1144(b)(2)(A). However, the savings clause only saves state laws that "regulate" insurance. (*See Security Life Insurance Company of America v. Meyling*, 146 F.3d 1184 (9th Cir.1986)). Plaintiff's common law claims for bad faith and breach of contract do not fall within the savings clause.

**Conclusion**

The ACWA Plan is a private ERISA plan which includes various public and private participants. Because ACWA is not an instrumentality of political subdivisions of the State, the Plan is not a governmental plan. To hold otherwise would permit private employers to evade the requirements of ERISA. Accordingly, the court finds that this matter is governed by ERISA. Because plaintiff's state law claims are preempted by ERISA, the only remedy is through the ERISA civil enforcement scheme. *See Crull*, 58 F.3d at 1389–90.

IT IS THEREFORE ORDERED that defendant's motion for summary adjudication be, and the same hereby is, GRANTED. It is without substantial controversy that this

---

**6.** The court also notes that ACWA does not provide any essential services to the public agencies. Indeed, it appears that ACWA is a water-oriented interest group that lobbies the government. ACWA claims that it "works hard" for its members on "legislation" and "regulatory policy" and is a "respected advocate" on water issues in both "Sacramento and Washington, DC." Holman Decl., Ex. 3 at A–1. It would be incongruous to find such an organization entitled to the ERISA governmental plan exception.

**7.** *See Crull*, 58 F.3d at 1390 ("[W]e have held that state law claims of estoppel, waiver, breach of contract, quasi estoppel, and bad faith ... 'relate to' an 'employee welfare benefit plan' because they represent attempts to recover benefits allegedly owed under the plan.")(citing cases).

action is governed by ERISA, and that plaintiff's state law claims are preempted by ERISA. Plaintiff's state law claims are therefore hereby DISMISSED WITHOUT PREJUDICE. Plaintiff is granted 20 days from the date of this order to amend her complaint to state a cause of action under ERISA.