John D. HALL, et al., Plaintiff

v.

**MAINE MUNICIPAL EMPLOYEES HEALTH TRUST, Defendant**

Civil No. 99–CV–208–B.

United States District Court, D. Maine.

March 15, 2000.

Peter L. Thompson, Law Offices of Ronald Coles, Kennebunk, ME, Joseph P Ditre, Consumer Health Law Program, Augusta, ME, for plaintiffs.

Charles A. Harvey, Jr., Harvey & Frank, Portland, ME, for defendant.

## ORDER AND MEMORANDUM

BRODY, District Judge.

Plaintiffs, John and Margaret Hall, filed this action in state court on behalf of their daughter, Abigail Hall. Claiming that Plaintiffs' case amounted to a claim for benefits subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, Defendant, Maine Municipal Employees Health Trust ("MMEHT" or the "Trust") removed the case to this Court. Before the Court is Plaintiffs' Motion to Remand. For the reasons discussed below, Plaintiffs' Motion is GRANTED.

### I. BACKGROUND

John Hall ("Hall") works as a police officer for the Town of Winthrop (the "Town"). As a benefit of his employment with the Town, Hall receives health insurance for himself and his family. The only insurance the Town offers its employees is through Defendant MMEHT. Although the Town directly pays most of the MMEHT premium for insuring the Halls,

it does require Hall to make a small contribution toward his family's coverage. The Town deducts this contribution from Hall's paycheck.

In their complaint filed in state court, Plaintiffs charge MMEHT with breach of contract and violations of Maine's Unfair Claims Settlement Practices Act, 24–A M.R.S.A. § 2436–A. Plaintiffs' claims arise out of MMEHT's decision to terminate speech therapy benefits for Abigail Hall, who receives treatment for a severe speech disorder. In removing the case to federal court, MMEHT asserts that the Halls' state claims are preempted because MMEHT is an ERISA plan. *See* 29 U.S.C. § 1132(a).

MMEHT was established as the successor to a group insurance plan previously maintained by the Maine Municipal Association ("MMA" or the "Association"). The MMA is a voluntary association of municipalities and its voting membership is open to cities, towns, and plantations within Maine. The Association has been recognized by the Maine Legislature as "an instrumentality of its member municipal and quasi-municipal corporations." 30–A M.R.S.A. § 5721.[1] In 1982, many MMA members were concerned about the rapidly escalating costs of medical care. As a result of these concerns, an advisory committee was formed. Based on the advisory committee's report, the MMA designated a group of individuals to establish MMEHT.

As a member of MMA, the Town of Winthrop is one of 404 employers who participate in the Trust. The overwhelming majority of these employers are other municipalities and, like the Town of Winthrop, governmental employers. Nonetheless, some non-governmental employers are eligible to participate in MMEHT.[2] Thus, while MMEHT primarily provides medical insurance to governmental employees, like Hall, it also offers its medical plan to 98 employees of 17 non-governmental employers, who qualify for MMEHT through their non-voting, associate memberships in MMA.[3] Pursuant to the Trust Agreement under which MMEHT operates (the "Trust Agreement"), eligible employers enter into the Trust "for the benefit of Employees." Pursuant to the Trust Agreement, these Employees are then considered "members" of MMEHT.

An independent board of trustees (the "Trustees") controls and directs the operations of MMEHT. All Trustees are MMEHT members and receive some form of benefits through the Trust. Currently,

1. Although the Legislature recognized the MMA as an instrumentality of both municipal and quasi-municipal corporations, according to MMA's by-laws, only municipal members have voting rights and are eligible to sit on the Executive Council. *See* Maine Municipal Association By–Laws ("By–Laws"), art. III, §§ 1–2 & art. IV, § 3. Comparatively, quasi-municipal corporations are eligible for associate membership, which does not carry voting rights. *See* By–Laws, art. II, § 3.

2. The non-governmental employers are able to participate in MMEHT pursuant to a 1990 policy adopted by the Board of Trustees that allows associate MMA members (non-voting MMA members) to participate in the Trust if they are non-profit organizations and perform a municipal function for the general public. Examples of some organizations that meet these qualifications include libraries, recycling organizations and ambulance services. Out of the 404 employers who participate of

in the Trust, only 17, or 4.2%, are non-governmental. (Aff. of Stephen Gove, dated October 15, 1999, ¶ 16.)

3. According to the evidence submitted by MMEHT, there were a total of 16,399 employees participating in the Trust as of September 1, 1999. 609, or 3.7%, of the participating employees work for non-governmental employers.

Of the 16, 399 MMEHT members, 7,301 participate in the medical plan (1.3% of which are non-governmental employees). Additionally, 5,632 employees participate in MMEHT's short term disability plan (5.7% of which are non-governmental employees), 2, 210 employees participate in the dental plan (7.8% of which are non-governmental employees) and 1,256 participate in the supplemental life insurance plan (1.3% of which are non-governmental employees). (*See* Aff. of Stephen Gove, dated October 15, 1999, ¶ 16.)

a five person Trustee Selection Committee appoints each of the eleven trustees to a three year term. The Selection Committee itself consists of representatives appointed by the Board of Trustees and MMA's executive council. Pursuant to the Trust Agreement, the Selection Committee considers geographical distribution as well as the size of the employer in selecting the Trustees who will administer MMEHT. In making its selections, the Committee "attempt[s] to ensure that at least two (2) Trustees are non-management members and one (1) Trustee is a retiree member receiving continued coverage under the Trust."[4] (Second Amendment to Trust Agreement section 4.04.)

Since its establishment in 1982, MMEHT has operating on the assumption that it qualifies as an ERISA plan and filed all of the necessary papers with the IRS and the Department of Labor. In fact, the Trust Agreement makes repeated references to complying with ERISA. (*See* Trust Agreement section 5.01(k)(1), 5.06, and 8.1). Relying on its authority under ERISA, the Department of Labor audited MMEHT in 1993. During that audit, MMEHT asked the Department of Labor whether it might be exempt from ERISA as a governmental plan. The Department of Labor responded to this inquiry by saying that MMEHT "may be a Governmental Plan as defined by ERISA" and suggested that the Trust seek a formal letter ruling on this question. Despite the Department of Labor's suggestion, the Trustees decided not to seek a formal opinion and simply continued to comply with ERISA.

## II. STANDARD FOR REMOVAL OF AN ERISA CASE

When a defendant removes a case under 28 U.S.C. § 1441, the defendant carries the burden of establishing the Court's sub-ject matter jurisdiction. *See Danca v. Private Health Care Systems, Inc.,* 185 F.3d 1, 4 (1st Cir.1999). This burden requires "a colorable showing that a basis for federal jurisdiction exists." *See id.* (citations and internal quotations omitted).

When the basis for federal jurisdiction is a federal statute, such as ERISA, that allows for complete preemption, the Court looks beyond the face of the complaint to determine whether the plaintiff's state law claim is actually preempted under federal law. *See id.* at 5. Therefore, to justify removal on the basis of ERISA preemption, Defendant must make a colorable showing that Plaintiffs' allegations give rise to claims for benefits under ERISA.

## III. DISCUSSION

ERISA provides for the uniform, comprehensive federal regulation of private employee benefit plans. Therefore, state claims against benefit plans subject to ERISA regulation are generally preempted. *See id.* at 7. In this case, the parties agree that Plaintiffs' claims arising out of a denial of benefits would fall under ERISA § 502(a), if MMEHT is a plan subject to ERISA. *See* 29 U.S.C. § 1132(a). In their Motion to Remand, Plaintiffs claim that MMEHT is an not ERISA plan because it falls under the governmental plan exception. *See* 29 U.S.C. §§ 1003(b)(1) & 1002(32). In response, MMEHT argues that it is, in fact, an ERISA plan and does not fit within the statute's definition of governmental plan.

It is clear that MMEHT desires to be an ERISA plan. To that end, MMEHT has complied with ERISA's various reporting requirements since 1982. However, desire and compliance do not an ERISA plan make. A benefit plan does not choose whether to opt in or opt out of ERISA.

---

**4.** MMEHT has not supplied this Court with information regarding who actually serves as Trustees now or in the past. Therefore, the Court relies on the language of the Trust Agreement and, absent evidence to the con-trary, concludes that eight of the eleven Trustees are "management", two of the Trustees are "non-management" employees, and one Trustee is a retired employee.

See *Triplett v. United Behavioral Health Systems, Inc.,* No. 98–3065, 1999 WL 238944, at *3 (E.D.Pa. March 29, 1999). In enacting ERISA "to curb abuses in the administration of private employee welfare and pension plans." *Feinstein v. Lewis,* 477 F.Supp. 1256, 1260 (S.D.N.Y.1979), Congress excluded governmental plans because it apparently thought that regulating the plans that state and local governments offered their employees would raise federalism concerns. *See id.* at 1261.

Before this Court can determine whether MMEHT fits within the governmental plan exception, it must first determine whether MMEHT fits within ERISA's definition of "employee benefit plan," or more specifically, "employee welfare benefit plan" ("EWBP"). *See* 29 U.S.C. § 1002(3) (defining employee benefit plan). Under section 1002(1), an employee welfare benefit plan requires:

(1) a "plan, fund, or program"

(2) established or maintained

(3) by an employer or an employee organization or both

(4) for the purposes of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment, or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits

(5) to participants or their beneficiaries.

*Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1082 (1st Cir.1990) (citing *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982) (en banc)). Plans that meet these five requirements are generally ERISA plans unless they fit within one of ERISA's enumerated exceptions. *See* 29 U.S.C. § 1003(b). In this case, it is clear that the plan offered to Hall through MMEHT satisfies requirements (1), (4), and (5). Consequently, the Court focuses its analysis on whether MMEHT fulfills requirements (2) and (3). Namely, the Court must determine whether the Trust is established or maintained by an employer, employee organization, or both. This inquiry begins with an examination of whether MMEHT is a single employer plan or a multiple employer plan, which is the first step in determining who established the Trust.

**A. Is MMEHT an employee welfare benefit plan with multiple subscribers or a multiple employer welfare arrangement?**

**1. Single Employer EWBP**

Plaintiffs initially argued that the Town of Winthrop should be viewed as an employer subscribing to MMEHT, and thereby establishing the benefit plan for its employees. Viewed from this perspective, MMEHT is a single employer EWBP with multiple subscribers. With the Town viewed as a single employer subscribing to the plan, MMEHT easily falls under the guise of the governmental plan exception. *See Silvera v. Mutual Life Ins. Co. of New York,* 884 F.2d 423, 426–27 (9th Cir.1989) (holding that "municipality's purchase of an insurance plan offered and administered by a private insurer constituted the establishment or maintenance of a governmental plan exempt from ERISA"). Under these circumstances, this Court would not have jurisdiction over Plaintiffs' claim. However, after receiving further briefing and evidence, which is discussed below, the Court concludes that the facts do not support classifying of MMEHT as a single employer EWBP.

**2. MEWA**

In fact, MMEHT is properly classified as a multiple employer welfare arrangement ("MEWA"). *See* 29 U.S.C. § 1002(40). ERISA defines a MEWA, in relevant part, as, "any ... arrangement, which is established or maintained for the purposes of offering or providing any benefit ... to the employees of two or more employers, or to their beneficiaries." 29 U.S.C. § 1002(40). Pursuant to an order for further briefing on this precise issue, MMEHT informed the Court that it con-

siders itself to be a MEWA and Plaintiffs do not dispute this assertion.

A MEWA is not necessarily a EWBP covered by ERISA. *See, e.g., Plog v. Colorado Assoc. of Soil Conservation Dists.,* 841 F.Supp. 350, 353 (D.Colo.1993) (concluding that a MEWA did not qualify as an EWBP). For a MEWA to qualify as an EWBP, the Court must determine that the there is a bona fide group or association of employers. If the Court determines that a bona fide group established the MEWA plan, then the group is considered the "employer" for the purposes of ERISA. *See* 29 U.S.C. § 1002(5) (defining employer as including a "group or association of employers" that acts "indirectly in the interest of an employer, in relation to an employee benefit plan"). Other courts that have faced this question have used six factors, laid out by the Department of Labor, to determine whether a MEWA was established by a bona fide association acting in the interests of the employers. Those factors include:

(1) how members are solicited;

(2) who is entitled to participate and who actually participates in the association;

(3) the process by which the association was formed;

(4) the purposes for which it was formed and, what if any, were the preexisting relationships of its members;

(5) the powers, rights, and privileges of employer-members; and

(6) who actually controls and directs the activities and operations of the benefit program.

*MDPhysicians & Assoc. Inc. v. State Board of Ins.,* 957 F.2d 178, 185 n. 9 (5th Cir.1992) (citing DOL Op. No. 86–08a at 4 (Feb. 3, 1989); DOL Op. No. 84–11 at 3 (February 22, 1984); DOL Op. No. 82–59 at 2 (Nov. 10 1982)); *International Assoc. of Entrepreneurs of America Benefit Trust v. Foster,* 883 F.Supp. 1050, 1061 (E.D.Va.1995) (citing Pension and Welfare Benefits Admin., U.S. Dep't of Labor, Multiple Employer Welfare Arrangements Under the Employee Retirement Income Security Act: A Guide to Federal and State Regulation 9 (1992)). In addition to these six factors, courts have independently considered the "common economic or representation interest" of the members and how much control the employer members have over the plan. *See MDPhysicians,* 957 F.2d at 185; *International Assoc. of Entrepreneurs,* 883 F.Supp. at 1057–60.

■ Applying these factors to the facts presented by this case, the Court concludes that MMEHT qualifies as an EWBP. First, MMEHT limits its advertising to publications that are available to MMA members and does not solicit members from the general public. Second, MMEHT participation is limited to municipal members of the MMA and select associate MMA members whose non-profit organizations provide municipal services. This limited participation keeps MMEHT in compliance with its IRS classification, which requires that the participating entities be in "the same line of business."[5] Employers who perform municipal functions on a non-profit basis, thereby making

---

**5.** Because all of the participants in MMEHT are in the same line of business, MMEHT qualifies under the Internal Revenue Code as a voluntary employees' beneficiary association. *See* 26 U.S.C. § 501(c)(9) (exempting from taxation a "[v]oluntary employees' beneficiary association ['VEBA'] providing for the payment of life, sick, accident, or other benefits to the members of such an association or their dependents or designated beneficiaries, if no part of the net earning of such association inures ... to the benefit of any private shareholder or individual"). MMEHT was

issued a letter ruling that it was exempt from Federal income taxes under section 501(c)(9) on August 20, 1982.

The Court does not consider this tax designation to be conclusive evidence that MMHET is established and maintained by an employee organization, as suggested by Defendant. *See* DOL Op. 82–34A (July 22, 1982) (finding a trust designated by the IRS as a VEBA under section 501(c)(9) was actually established, maintained, and controlled by the employer for purposes of ERISA).

their designated employees eligible to participate in MMEHT.

As to the third factor, MMEHT was formed in 1982 by individuals who were designated by the MMA to establish the Trust. Thus, MMEHT also satisfies the fourth factor because there was a preexisting relationship among the entities that initially entered into the Trust. Namely, these entities were all municipal members of the MMA. Through the establishment of MMEHT, these entities sought to control the "rapidly escalating costs of medical care." (Aff. of Stephen Gove, dated Jan. 31, 2000, ¶ 7.) Thus, there is a clear common economic and representation interest among the plan employers who, as municipal and quasi-municipal organizations, wished to provide low-cost employee benefits by pooling resources in an independently run trust.

Finally, the Court must look at the control of MMEHT and the powers, rights, and privileges of employers participating in the Trust. As previously explained, a Board of Trustees controls MMEHT. Employers do not directly control MMEHT, rather they only control the de-cision to participate in the Trust and designate those employees that they wish to have covered by the Trust. An examination of the make up and appointment of Trustees shows additional indirect employer control. Pursuant to the most recent amendment to the Trust Agreement, a Trustee Selection Committee appoints MMEHT Trustees. The Committee is made up of five members, three of whom are appointed by the current Board of Trustees and two of whom are appointed by the Executive Committee of the MMA. Only municipal officers and "chief appointed administrative officials," such as a town manager, are eligible to sit on Executive Committee of the MMA.[6] Thus, two spots on the Trustee Selection Committee are directly controlled by municipal employers. Additionally, it appears that employers are eligible to serve as MMEHT's Trustees.[7] Thus, while MMEHT Trustees are all Trust participants and have an independent fiduciary duty to the Trust, employers have input in that they play a role in selecting who will serve as MMEHT Trustees and are represented on the MMHET's Board of Trustees.[8]

6. *See* By–Laws, art. III § 1, which states, in relevant part:

At the time of election, each Director shall hold the position of municipal officer, as defined in 1 M.R.S.A. § 72(12), or the position of town or city manager or chief appointed administrative official, in an active member municipality.
*Id.*

7. As previously discussed, the language of the Trust Agreement suggests a significant "management" presence on the Board of Trustees. A "management" employee of a municipality is, by definition, empowered to act either directly or indirectly in the interest of the municipality. When acting in such a capacity, a management employee would fall under ERISA's definition of employer. *See* 29 U.S.C. § 1002(5).

8. In its attempt to characterize the Trust as established and maintained by an employee organization, MMEHT notes that all of its Trustees are participants of the Trust. Since to be a participant one must be employed by an eligible municipal or quasi-municipal employer, MMEHT argues the Trust is main-tained by participating employees, not employers. The Court notes that it is difficult to draw the line between government employee and government employer under these circumstances. For example, a town manager is a government employee receiving a government paycheck. At the same time, the manager is seen as an employer by other town employees because the manager may be responsible for hiring and supervising the work of other town employees. Thus, if a town manager serves as one of MMHET's "management" Trustees, one cannot say that the manager is solely an employee representative.

In a government that is run "for the people, by the people," the people elect and appoint officials who hire and supervise other civil servants. However, even these officials can be viewed as employees who answer to the people, the ultimate government employer. Nonetheless, the Court does not adopt this wide definition of government employee for the purposes of deciding this ERISA case. Instead, the Court considers elected municipal officials and chief appointed administrative officials as a employers to the extent they

Weighing all of these facts, the Court concludes that MMEHT is a MEWA that qualifies as an EWBP because it was established by a bona fide "association of employers acting indirectly in the interest of an employer" in relation to an employee benefit plan. *See* 29 U.S.C. § 1002(1) & (5).[9] Despite the Court's initial concerns that MMEHT did not share the necessary common economic or representational interest to qualify as an EWBP, which grew out of MMEHT's initial focus on the non-governmental employers participating in MMEHT, the Court finds that all of the employers participating in the Trust share a common representational interest—providing municipal services.

**B. If MMEHT is an EWBP, does it fall under ERISA's governmental plan exception?**

Having found that MMEHT is not only a MEWA but also fits within ERISA's definition of an EWBP, the Court must next determine whether MMEHT falls under ERISA's governmental plan exception.

*See* 29 U.S.C. § 1003(b)(1). ERISA defines a governmental plan as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32).

Having found that MMEHT is maintained by an independent Board of Trustees, it is clear that the plan in this case is not maintained by any municipal government.[10] Because the plain language of the statute clearly defines a governmental plan as a plan "established or maintained" by a government, 29 U.S.C. § 1002(32), this Court need not reach the question of who maintains MMEHT if it concludes that a municipal government established the plan. *See Triplett*, 1999 WL 238944 at *3 (emphasizing disjunctive language of ERISA's definition of governmental plan). Therefore, the Court focuses its inquiry on whether MMEHT was established by municipal governments.[11]

act "directly as an employer, or indirectly in the interest of [their municipal] employers" thereby fitting within ERISA's definition of employer. 29 U.S.C. § 1002(5).

9. MMEHT has argued that the Trust is independently maintained by an employee beneficiary organization. While the Court is reluctant to find MMEHT an employee beneficiary organization for the purposes of ERISA despite its classification as a VEBA under the Internal Revenue Code, the fact remains that ERISA's definition of EWBP refers to a plan being "established or maintained," not established and maintained. *See* 29 U.S.C. § 1002(1). Therefore, once the Court finds that MMEHT was established by an association of employers, it need not determine about who maintains the plan to conclude that the plan qualifies as an EWBP.

10. According to the Department of Labor, a plan may still be an exempt governmental plan under ERISA if it is maintained by an employee organization. In a very recent advisory opinion, the Department of Labor explained, "The term 'governmental plan' also includes a plan administered by an 'employee organization,' within the meaning of ERISA §§ 3(4), that provides benefits exclusively to employees of a political subdivision, agency,

or instrumentality of local government who are also the only members of the employee organization, provided that the plan is funded exclusively by the government and by the government's employees who are members of the sponsoring employee organization." DOL Op. 99–15A (November 19, 1999). The Department of Labor ultimately concluded that the plan in question, which was administered by an employee organization and included one non-governmental employee, was excluded from ERISA as a governmental plan. *See id.*

11. Because the Maine Legislature has declared the MMA to be an "instrumentality" of its member municipalities, one might initially think that the Court could conclude that MMEHT was a governmental plan if it was established by the MMA. *See* 29 U.S.C. § 1002(32) (defining governmental plan as including a plan established by a government instrumentality) However, ERISA's definition of governmental plan focuses on whether the plan in question was established by a governmental entity for "its employees." 29 U.S.C. § 1002(32). The question in this case involves the plan provided to a Town of Winthrop employee—not a MMA employee. Thus, the Court must focus its inquiry on

No court has previously addressed this question in the context of a governmental MEWA. However, other courts, who have faced the question of whether a plan is a government established plan, have found a governmental plan when a city purchased a private plan for its employees thereby "delegat[ing] a task it otherwise would have undertaken had it chosen to set up a self-funded plan." *Silvera v. Mutual Life Ins. Co.*, 884 F.2d 423, 427 (9th Cir.1989).[12] More recently, the consensus view appears to be that "a governmental plan can be administered through a private insurer or administered by an independent board of trustees without losing its governmental status." *Triplett*, 1999 WL 238944 at *2 (describing the uniform holding of various courts that have faced the question of independent administration of governmental plans) (citations omitted).

In *Triplett*, the Court concluded that Pennsylvania Employees Benefit Trust ("PEBT") was a governmental plan even though independent trustees administered the plan, which was created as the result of a collective bargaining agreement between a state government and an employee union. *See id.* The only difference between MMEHT and PEBT is that MMEHT was created as a collaboration of multiple municipal governments, rather than as a result of an agreement between a state government and an employee union. This difference does not prevent the Court from finding that MMEHT is a gov-

ernmental plan. Certainly, if each town currently participating in MMEHT formed its own employee health trust, the individual town trusts would be considered governmental plans. The fact that many small municipalities joined together to do more cost effectively what each could have done separately does not place MMEHT outside of ERISA's definition of governmental plan.

MMEHT raises two arguments for why it does not fit within ERISA's governmental plan exception. MMEHT's first argument focuses on the number of "private participants" in MMEHT and argues that because there are more than a de minimis number of quasi-municipal participants in MMEHT, it cannot be considered a governmental plan. The Department of Labor has said that "governmental plan status is not affected by participation of a de minimis number of private sector employees." DOL Op. 99–10A (citing DOL Op. 95–27A).[13] Besides finding that a fraction of one percent is, in fact, de minimis, the Department of Labor has not set a limit on the number of non-governmental employees that may participate in a plan before it is no longer considered a governmental plan.

In determining the limits of de minimis in the context of governmental plans, the Court finds guidance in a recent District of Vermont case. In *Kirkpatrick v. Merit Behavioral Care Corp.*, 70 F.Supp.2d 443 (D.Vt.1999), the Court found that a health

whether the MMEHT was established for municipal employees, like Hall, by their employer. *Cf. Caranci v. Blue Cross & Blue Shield of Rhode Island*, No. C.A. 96–275L, 1999 WL 766974 at *4–*8 (D.R.I. Aug.19, 1999) (finding that Rhode Island Resource Recovery Corporation ("RIRRC") was a government agency or instrumentality as defined in ERISA and therefore the plan RIRRC offered its employees was a governmental plan).

**12.** In reaching this conclusion, the Ninth Circuit relied on the express language of ERISA while acknowledging that "Congress may well have intended ... to keep this plan within ERISA's grasp." *Silvera*, 884 F.2d at 427. Despite this acknowledgment, Congress has

not attempted to amend ERISA to bring governmental plans that are administered by private entities within ERISA's coverage.

**13.** The Court notes that "[o]pinion letters issued by the Secretary of Labor are not controlling even in the cases for which they are authored. Nonetheless, courts may derive guidance from them." *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1134 n. 2 (1st Cir. 1995) (citing *Reich v. Newspapers of New Eng., Inc.*, 44 F.3d 1060, 1070 (1st Cir.1995)). Thus, when faced with ERISA questions that the courts have not recently addressed, this Court has looked to the opinion letters cited throughout this opinion for guidance in determining whether MMEHT is subject to ERISA.

plan formed for public school employees that also provided insurance to some private school employees was a governmental plan. *See id.* at 446. In that case, non-governmental employees constituted 7.6% of the subscribers. *See id.* In this case, MMEHT has allowed the employees of a small number of non-profit organizations who perform municipal functions to participate in the Trust since 1990. Of the 16,399 employees participating in MMEHT, 609, or 3.7%, are non-governmental employees.[14] The Court is satisfied that this number of non-governmental employees is de minimis.[15]

Second, MMEHT argues that the Trust is established and maintained by employees, not by the municipal employers. While governmental employers do not directly maintain MMEHT, for the reasons previously discussed, the Court has determined that bona fide association of municipalities established MMEHT to provide benefits for their employees. Pursuant to ERISA's definition of employer, this bona fide group acted indirectly in the interest of the Town of Winthrop and other governmental employers in establishing MMEHT. Under these circumstances, the Court concludes that municipal governments, not an employee organization, established MMEHT. This conclusion is supported by the fact that the Trust was established at the direction of the MMA, an advisory organization that is considered to be "an instrumentality of its member municipal and quasi-municipal corporations" by the Maine Legislature. 30-A M.R.S.A. § 5722(9). Additionally, even today employees only become eligible for participation in MMEHT after their employer enters into the Trust agreement, thereby *establishing* their eligibility for the plan. Under these circumstances, it would be unreasonable to conclude that an employee organization established MMEHT.

■ Stripped to its essence, this case asks whether a governmental plan is established when an association of governmental employers acts in the interests of individual municipal employers to establish

---

**14.** Plaintiff argues that, in determining whether the number of non-governmental participants is de minimis, the Court should limit its inquiry to the medical plan, in which only 1.3% of the participating employees are non-governmental. Such an approach is problematic because the Court could find a de minumis number of participants in the medical plan but a greater than de minimis number of non-governmental participants in some other benefit plans offered through MMEHT. Consequently, parts of MMEHT could be subject to ERISA and other portions exempt from ERISA. Because of this potentially illogical result, the Court declines to adopt this approach and considers the overall number of non-governmental participating employees in MMEHT.

**15.** Defendant MMEHT has cited four cases that it claims stand for the proposition that "multiple employer plans that consist of both private and governmental employers should not be classified as governmental plans." (Def.'s Mem. in Opp. to Pls' Mot. to Remand at 6.) All four cases can be distinguished from the facts presented in this case. In *Livolsi v. City of New Castle*, 501 F.Supp. 1146 (W.D.Pa.1980), the court found that New Cas-

tle participated in a plan that was not subject to ERISA's governmental plan exception. In addition to the New Castle governmental employees, in *Livolsi*, the plan covered "some 11,000 employees" the "vast majority" of whom were "employed in the private sector." *Id.* at 1150. Thus, the number of non-governmental participants was far from de minimis. Similarly, in *Brooks v. Chicago Housing Auth.*, 1990 WL 103572 (N.D.Ill. July 5, 1990), the Court refused to "exempt an entire multiemployer plan as a governmental plan based on the participation of a governmental body" suggesting that, like *Livolsi*, the number of non-governmental employees was beyond de minimis. *Id.* at *3.

The other two cases cited by Defendant involved plans found to be governmental plans. *See Fellion v. Illinois State Toll Highway Auth.*, 1992 WL 159437 (N.D.Ill. July 1, 1992) (holding that when "the Authority set up its own, exclusive fund ... and merely hired a trust company to handle the money," a governmental plan was established); *Krystyniak v. Lake Zurich Community Unit Dist.* 783 F.Supp. 354 (N.D.Ill.1991) (finding the plan in question was a governmental plan and had not waived their exemption by designating an ERISA fiduciary).

a benefit plan. The Court finds that under these circumstances, MMEHT was established as a governmental plan and is thereby exempt from ERISA. *See* 29 U.S.C. § 1003(b)(1).

## III. CONCLUSION

Having found that MMEHT is subject to ERISA's governmental plan exception, the Court concludes that Defendant has failed to make a colorable showing that Plaintiffs' claims are preempted by ERISA. Therefore, the Court lacks subject matter jurisdiction over the case and Plaintiffs' Motion for Remand is GRANTED.

*SO ORDERED.*