Elaine L. CHAO, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

William Paul CROUSE,
et al., Defendants.

No. 1:03–CV–01585–TAB–DFH.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 22, 2004.

Howard Radzely, Peter D. Broitman, Richard J. Fiore, Ruben R. Chapa, Office of Solicitor, U.S. Dept of Labor, Chicago, IL, for Plaintiff.

Edward R. Hannon, Hannon Roop & Hutton, Indianapolis, IN, for Defendants.

## *ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

BAKER, United States Magistrate Judge.

### I. Introduction.

Secretary of Labor Elaine L. Chao (the "Secretary") seeks to hold Defendants William Paul Crouse and Carmelo Zanfei, as well as their wholly-owned companies TRG Marketing, LLC and TRG Administration, LLC (collectively, "TRG"), responsible for various alleged breaches of fiduciary duty under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA") arising from their management of the TRG Health Plan ("the plan"). Although Crouse and Zanfei dispute their fiduciary status under ERISA, they "accept full responsibilities [sic] for their actions and fully agree to a court order directing the defendant's [sic] to resolve all outstanding claims." [Docket No. 44, pp. 1–2]. Moreover, "[r]ecognizing that their financial difficulties arose from their exercise of control and discretion over Plan assets when they lacked the requisite knowledge to do so, Crouse and Zanfei also agree to being permanently enjoined from being fiduciaries either directly or indirectly of any ERISA plan." [Docket No. 44, p. 2]. These concessions are significant, in that at least part of the relief requested from the Court is to "restrain[ ] the defendants from serving as fiduciaries ... to the TRG Health Plan or to any other ERISA-covered employee benefit plan" and to order "the defendants to pay all health claims filed by plan participants and beneficiaries under the TRG Health Plan." [Compl., p. 6]. For the reasons set forth below, the Secretary's motion for summary judgment is granted in part and denied in part.

### II. Summary Judgment Standard.

Summary judgment is proper where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Waste Management of Illinois,* 361 F.3d 1021, 1028 (7th Cir.2004). The Court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Butera v. Cottey,* 285 F.3d 601, 605 (7th Cir.2002).

### III. Background.[1]

TRG Marketing first organized in Indiana as a limited liability company

---

1. The facts are either undisputed or viewed in a light most favorable to Defendants, the non-moving parties. In addition, this background section is a brief overview of the facts and is

("LLC") in April 2000. [Pl.'s Ex. E, pp. 9–11; Pl.'s Ex. H (TRG Ex. No. 1), p. 448]. On December 29, 2000, Crouse and Zanfei re-organized TRG Marketing as a Nevada LLC, filing articles of dissolution with Indiana on January 2, 2001. [Pl.'s Ex. H (TRG Ex. No. 1), pp. 445–46, 448; Pl.'s Ex. E, pp. 10–13]. In addition, also on December 29, 2000, Crouse and Zanfei organized TRG Administration as a Nevada LLC. [Pl.'s Ex. H (TRG Ex. No. 2), p. 442; Pl.'s Ex. E, pp. 15–16]. Thereafter, on February 26, 2001, TRG Marketing and TRG Administration applied for Certificates of Authority to do business in Indiana as foreign LLCs. The Indiana Secretary of State granted both applications on April 5, 2001. [Pl.'s Ex. H (TRG Ex. No. 2), pp. 443–44, 449–50]. Crouse held the position of Chief Executive Officer at both TRG Marking and TRG Administration and also owned fifty percent of both companies. [Pl.'s Ex. E, pp. 8–9, 14–15]. Likewise, Zanfei owned fifty percent of both TRG companies and held the position of Chairman of the Board for each. [*Id.*].

TRG Marketing first started the plan in August 2000. [Pl.'s Ex. K, p. 29; Defs.' Ex. 2, p. 121]. To this end, TRG Marketing contacted with SAI Plus, LLC ("SAI") to structure the plan and to provide third-party administration services. [Defs.' Ex. 2, p. 42–43]. According to the agreement, SAI was to provide actuarial and claims processing services for the plan. [Defs.' Ex. 2, p. 121]. Under the agreement with SAI, TRG Marketing received premiums directly from plan participants. TRG Marketing then forwarded the premiums, less 25 percent for operating costs and commissions, to SAI for payment of claims. [Defs.' Ex. 2, pp. 121–23]. In late 2000, TRG Marketing learned that, despite repeated assurances, SAI had failed to pay a single claim. [Pl.'s Ex. K, pp. 29–32].

Therefore, TRG Marketing terminated its relationship with SAI and searched for a replacement third party administrator. [Pl.'s Ex. K, pp. 31–32].

On February 1, 2001, TRG Marketing contracted with USA Service Group ("USA") to provide claims processing and administrative services for the plan. [Pl.'s Ex. H (TRG Ex. No. 5), pp. 239, 244; Pl.'s Ex. E, pp. 34–35, 38–39]. The plan was "designed to protect Plan Participants and their Dependants against certain catastrophic health expenses." [Pl.'s Ex. H (TRG Ex. No. 7), p. 189]. In addition, the plan was self-funded with funding "derived from the funds of the Employer and any contribution made by covered Employees." [Pl.'s Ex. H (TRG Ex. No. 6), p. 83].

According to the agreement with USA, TRG Marketing, as plan sponsor, would provide "administrative and fiduciary functions for the Plan." [Pl.'s Ex. H (TRG Ex. No. 5), p. 239]. TRG Marketing formed TRG Administration to handle the administrative functions for the plan, with the exception of claims processing. [Pl.'s Ex. E, p. 91; Defs.' Ex. II, pp. 199–200]. Despite USA's claims services responsibilities, TRG Marketing retained "final authority and responsibility for the implementation of the Plan, and its operation." [Pl.'s Ex. H (TRG Ex. No. 5), p. 239]. In addition, TRG Marketing performed specific duties for the plan, including "procuring necessary PPO Network Contracts and prescription providers." [Pl.'s Ex. H (TRG Ex. No. 5), p. 241]. Crouse's specific responsibilities with respect to the plan included finding and selecting third party service providers, negotiating contracts, and ensuring that the plan was implemented correctly. [Pl.'s Ex. E, pp. 32–33]. Zanfei, on the other hand, did not have day-to-day responsibilities over the

not meant to be an exhaustive recitation of all material facts in this case.

plan. However, Zanfei did participate in the selection of the plan's third party administrator. [Pl.'s Ex. E, pp. 33–34; Pl.'s Ex. F, p. 32].

TRG invoiced employers that subscribed to the plan on behalf of their employees on a monthly basis for plan premiums. [Pl's Ex. G, pp. 32–37; 57–58; Pl.'s Ex. E, pp. 65–66]. Once received, TRG deposited the employers' premiums directly into its corporate bank accounts, rather than a separate plan trust account. [Pl.'s Ex. B, ¶¶ 4, 5; Pl.'s Ex. G, pp. 60–61; Pl.'s Ex. E, pp. 83, 86, 89–90; Answer, ¶ 5]. From February 1, 2001 through July 1, 2001, TRG deposited premiums into, and transferred among, corporate bank accounts at Fifth Third Bank. The corporate accounts included a TRG Administration account, a TRG Marketing account, and a TRG claims account. [Pl.'s Ex. B, ¶ 5; Pl.'s Ex. G, pp. 60–61, 63, 69, 70, 73, 76; Pl.'s Ex. E, pp. 83, 86, 89]. Likewise, during September 2001 through November 30, 2001, TRG deposited premiums in similar corporate bank accounts at First Indiana Bank. [Pl.'s Ex. B, ¶ 5]. Crouse and Zanfei had authority and control over these TRG accounts. [Pl.'s Ex. B, ¶ 5; Pl.'s Ex. G, pp. 62, 77–79; Plaintiff's Ex. F, p. 40].

From February 1, 2001 through November 30, 2001, TRG deposited $25,808,307.82 into its corporate accounts. [Pl.'s Ex. C, ¶ 6]. Of this amount, all but an amount not exceeding $1,000 was derived from payment of plan premiums from participating employers. [Pl.'s Ex. B, ¶ 6; Pl.'s Ex. G, p. 63]. Additionally, during this same period, TRG expended $11,134,766.06 for the payment of participants' health claims from its corporate accounts. [Pl.'s Ex. C, ¶ 6]. Finally, also between February 1, 2001 and November 30, 2001, Defendants expended more than $3.4 million from its corporate accounts in the following manner:

- Zanfei spent $4,147.60 for a three-night stay at the Danielli Royal Hotel in Venice, Italy in August 2001 with his wife and his two children [Pl.'s Ex. C, ¶ 5 (and documents attached thereto); Pl.'s Ex. F, pp. 64–67];

- Zanfei spent $1,230 for the purchase of a blown glass plate to display in his home office [Pl.'s Ex. C, ¶ 5 (and documents attached thereto); Pl.'s Ex. F, pp. 64–65];

- $60,000 to Zanfei's personal trust account as a member distribution [Pl.'s Ex. F, pp. 50–54; Pl.'s Ex. H (TRG Ex. No. 21), p. 473];

- $10,000 to Zanfei's wife, Kathryn Zanfei, as a member distribution [Pl.'s Ex. F., pp. 59–62; Pl.'s Ex. H (TRG Ex. No. 22), p. 474];

- $2,708,293.02 paid as commissions to TRG's enrollment brokers for sales of the plan [Pl.'s Ex. C, ¶ 5 (and documents attached thereto); Pl.'s Ex. E, pp. 91–92, 170–71];

- Zanfei spent $883.48 for a two-night stay in Milan, Italy in August 2001 [Pl.'s Ex. C, ¶ 5 (and documents attached thereto); Pl.'s Ex. F, p. 64];

- Zanfei spent $8,303.64 for airfare and car expenses for a trip to Italy in August 2001 [Pl.'s Ex. C, ¶ 5 (and documents attached thereto)];

- Zanfei and TRG employee Frank Hulsey spent approximately $7,616.35 for five-day trip to Switzerland in April 2001 to obtain a line of credit to fund a business venture in payroll software development and sales [Pl.'s Ex. C, ¶ 5 (and documents attached thereto); Pl.'s Ex. F, pp. 71–73];

- $500,000 to pay a 10% funding requirement for a $5 million corporate line of credit to TRG Marketing on July 10 and 13, 2001 [Pl.'s Ex. B (and documents attached thereto); Pl.'s

Ex. E, pp. 164–68; Pl.'s Ex. H (TRG Ex. No. 27), pp. 476–77];

- $18,127 paid as commissions to Candra Crouse, Crouse's wife [Pl.'s Ex. C, ¶ 5; Pl.'s Ex. E, pp. 159–61];

- $81,085.95 paid as commissions to enrollment brokers who sold the Health Incentive Plan—another plan health plan marketed by Crouse and Zanfei [Pl.'s Ex. C; Pl.'s Ex. E, pp. 21–22, 24];

- $10,000 charitable contribution by TRG Marketing to Fore Kids Golf Classic [Pl.'s Ex. C];

- $12,058.82 in food and beverage expenditures [2] [Pl.'s Ex. C]; and

- $307.52 for purchases of alcohol at Torrence Liquors and Village Liquor from May 2001 through August 2001. [Pl.'s Ex. C].

On November 28, 2001, TRG Marketing advised plan subscribers that coverage under the plan would be terminated effective November 30, 2001. [Pl.'s Ex. H (TRG Ex. 4), pp. 454–55; Pl.'s Ex. E., pp. 25–30; Defs.' Ex. 2, p. 208]. At the time that TRG Marketing terminated coverage under the plan, TRG's corporate bank accounts contained $207,088.40. [Pl.'s Ex. C, ¶ 7]. As of January 29, 2003, the estimated amount of outstanding claims against the plan, as determined by Defendants' claims auditor, equaled between $5 and $17.5 million. [Defs.' Ex. 2, pp. 181–82].

## IV. Discussion.

In relevant part, 29 U.S.C. § 1109(a) states that:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

Thus, there are several questions before the Court. First and foremost, the Court must decide whether the TRG Health Plan is a plan covered by ERISA. If so, the Court must then decide whether any or all of the Defendants were fiduciaries to the plan. Should fiduciary status apply, the Court must then consider whether any of the fiduciary duties imposed by ERISA were violated. Finally, if fiduciary duties were breached, the Court must then fashion a remedy. As explained more fully below, resolution of these issues varies with respect to each Defendant. Accordingly, summary judgment is granted in part and denied in part.

### A. The TRG Health Plan is Subject to ERISA.

█ The Secretary argues that the TRG Health Plan meets the definition of a multiple employer welfare benefit plan ("MEWA"). 29 U.S.C. § 1002(40). Moreover, according to the Secretary, because "the individual employers subscribing to the TRG Health Plan formed their own ERISA covered plans," the Secretary "has Title I enforcement authority over the operation of the TRG Health Plan." [Docket

2. The Secretary maintains that this figure equals $13,456.66. [Docket No. 47, p. 8 n. 15]. However, for purposes of summary judgment, the Court will consider (without deciding) the figure proposed by Defendants. *See* Docket No. 44, p. 12 ("A cursory addition of figures presented in Lindsey's evidence reveals only $12,058.82 in food and beverage expenditures....")

No. 28, p. 13]. Defendants apparently concede this point. In response to the Secretary's motion for summary judgment, Defendants supply no evidence or argument to the contrary. Indeed, as more fully explained below, the undisputed evidence indicates that the plan met the requisite criteria to fall under ERISA's umbrella and to be subject to this Court's jurisdiction.

With exceptions not relevant here, ERISA defines a MEWA as "an employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) to the employees of two or more employers ... or to their beneficiaries." 29 U.S.C. § 1002(40). As noted above, the plan was "designed to protect Plan Participants and their Dependants against certain catastrophic health expenses." [Pl.'s Ex. H (TRG Ex. No. 7), p. 189]. The catastrophic health benefits provided by the plan undoubtedly fall within the gamut of "medical, surgical, or hospital care or benefits" described in 29 U.S.C. § 1002(1). Moreover, while established and administered by TRG, the plan provided benefits to multiple employer subscribers and their employees. [Pl's Ex. G, pp. 32–37; 57–58; Pl.'s Ex. E, pp. 65–66]. Accordingly, the plan meets the definition of a MEWA as defined by 29 U.S.C. § 1002(40).

■ However, "[a] MEWA is not necessarily [an employee welfare benefit plan] covered by ERISA." *Hall v. Maine Municipal Employees Health Trust*, 93 F.Supp.2d 73, 77 (D.Me.2000), *citing Plog v. Colorado Assoc. of Soil Conservation Dists.*, 841 F.Supp. 350, 353 (D.Colo.1993). "For a MEWA to qualify as an [employee welfare benefit plan], the Court must determine that the [sic] there is a bona fide group or association of employers. If the

Court determines that a bona fide group established the MEWA plan, then the group is considered the 'employer' for the purposes of ERISA." *Hall*, 93 F.Supp.2d at 77. The plan may also be subject to ERISA's fiduciary obligations if it acts as a fiduciary to plans that meet the definition of an employee welfare benefit plan. *See Donovan v. Dillingham*, 688 F.2d 1367, 1372 n. 10 (11th Cir.1982) (noting that plan "may nonetheless be subject to ERISA's fiduciary responsibilities if it is a fiduciary to employee benefit plans established or maintained by other entities" even though it was not an employee benefit welfare plan); DOL Opinion Letter No. 96–25A, 1996 WL 634362, at * 3–4; *Chao v. Graf*, 2002 WL 1611122, at * 5–6 (D.Nev.2002) ("while a multiple employer trust is not an employee welfare benefit plan, ERISA's fiduciary obligations still apply to the trust if it is a fiduciary to employee welfare benefit plans established by others.").

■ The Secretary does not argue that the plan at issue is itself an employee welfare benefit plan. Instead, the Secretary argues that Defendants are subject to ERISA's fiduciary obligations because the plan receives "assets from the individual plans of its subscribing employers which themselves qualify as ... employee welfare benefits plans." [Docket No. 28, p. 13]. The Court agrees. In other words, if the subscribing employers to the plan established their own individual employee welfare benefits plans, the Defendants would be subject to ERISA's fiduciary obligations as fiduciaries to those plans. The Seventh Circuit has noted that " '[i]n determining whether a plan, fund or program ... is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for

receiving benefits.'" *Diak v. Dwyer, Costello & Knox*, 33 F.3d 809, 812 (7th Cir. 1994), *quoting, Donovan*, 688 F.2d at 1373. As the Secretary points out, the undisputed evidence establishes that the employer subscribers to the plan satisfy each of these criteria. For example, with respect to the intended benefits, the plan's Health Plan Handbook provides a detailed summary of what beneficiaries may expect and the procedures for receiving those benefits. [Pl.'s Ex. H (TRG Ex. 6), pp. 85–86, 100–01, 115–16; Pl's Ex. H (TRG Ex. 7), pp. 203–10, 217–24]. Moreover, the plan defines "plan participants" as those "employees and their dependents that enroll with an Employer–Administered Health Plan" and further explains the eligibility requirements for those employees. [Pl.'s Ex. H (TRG Ex. 7), pp. 197, 200]. Finally, the plan documents explain that the plan is a self-funded health plan with benefits "derived from the funds of the Employer and any contribution made by covered Employees." [Pl.'s Ex. H (TRG 6), p. 83]. Accordingly, to the extent Defendants exercised fiduciary responsibilities over the plan, they are subject to ERISA's fiduciary obligations.

### B. Whether the Defendants are Fiduciaries.

Having determined that fiduciaries of the plan are subject to ERISA's mandates, the Court must next determine whether any or all of the Defendants were actually fiduciaries. In relevant part, ERISA provides:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary

responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Secretary maintains that each of the Defendants meets this definition. In response, the Defendants apparently concede that TRG Marketing and TRG Administration were fiduciaries to the plan, focusing their argument solely on the fiduciary status of Crouse and Zanfei. For the reasons explained below, the Court agrees with the Secretary—at least with respect to TRG Marketing, Crouse and Zanfei.

█ As outlined above, according to the agreement with USA, TRG Marketing, as plan sponsor, would provide "administrative and fiduciary functions for the Plan." [Pl.'s Ex. H (TRG Ex. No. 5), p. 239]. Moreover, TRG Marketing retained "final authority and responsibility for the implementation of the Plan, and its operation." [Pl.'s Ex. H (TRG Ex. No. 5), p. 239]. Finally, TRG Marketing performed specific duties for the plan, including "procuring necessary PPO Network Contracts and prescription providers." [Pl.'s Ex. H (TRG Ex. No. 5), p. 241]. Given these undisputed facts, the Court finds that TRG Marketing was a fiduciary to the plan.

█ The same, however, cannot be said of TRG Administration at the summary judgment stage. While the Defendants do not contest the Secretary's conclusion that TRG Administration also acted as fiduciary to the plan, the Court must still apply the summary judgment standard and view the facts in a light most favorable to the non-moving parties. Here, the undisputed facts indicate that TRG Marketing formed TRG Administration to handle the administrative functions for the plan, with the exception of claims processing. [Pl.'s Ex. E, p. 191; Defs.' Ex. II, pp. 191–200]. In other words, TRG Administration provided nothing more than administrative support for the plan. Administrative support,

without discretion, is not enough to implicate fiduciary obligations on the part of TRG Administration. In *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir.1992), the Seventh Circuit explained:

> If the agent has no discretion and the principal has a normal capacity for self-protection, ordinary contract principles should generally suffice. At all events, ERISA makes the existence of discretion a sine qua non of fiduciary duty. 29 U.S.C. § 1002(21)(A). And NBC, the plan administrator, had no discretion. Its function under the plan was clerical, mechanical, ministerial—not discretionary. It performed the list of ministerial functions spelled out in the Department of Labor's regulations under ERISA. 29 C.F.R. § 2509.75-8. It was not a fiduciary.

Based on the record on summary judgment, the Court finds that the same is true here. There is no evidence that TRG Administration performed discretionary tasks with respect to the plan. Accordingly, at the summary judgment stage, the Court cannot find that TRG Administration was a fiduciary.[3]

The real dispute, however, does not rest with TRG Administration or TRG Marketing's status as fiduciaries, but whether Crouse and Zanfei were fiduciaries to the plan. The Secretary argues that "ERISA 'defines fiduciary not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties—and to damages—under 409(a).'" [Docket No. 28, p. 17], *quoting*

*Mertens v. Hewitt Associates*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (internal citation omitted). Accordingly, the Secretary concludes that Crouse and Zanfei were functional fiduciaries to the plan because they performed fiduciary functions for the plan as officers of TRG Marketing and because they exercised control over plan assets. [Docket No. 28, pp. 17–20]. In contrast, relying solely on *Confer v. Custom Engineering*, 952 F.2d 34 (3rd Cir.1991), Defendants argue that "Crouse and Zanfei were not functional fiduciaries because neither were [sic] named as such in any TRG Health Plan document and they were acting as corporate officers of a corporation that was a fiduciary." [Docket No. 44, pp. 8–9]. Defendants' argument is unpersuasive.

In *Confer*, the Third Circuit held that "when an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of that corporation are not fiduciaries within the meaning of section 3(21)(A)(iii), unless it can be shown that these officers have *individual* discretionary roles as to plan administration." *Confer*, 952 F.2d at 37. Defendants argue that Crouse and Zanfei acted only in their capacity as officers of TRG. Accordingly, Defendants contend that because Crouse and Zanfei were not named as fiduciaries in plan documents and because they "did not have any individual discretionary authority," Crouse and Zanfei were not fiduciaries to the plan. [Docket No. 44, p. 10]. The Court disagrees. As explained below, *Confer* is distinguishable.

---

3. The distinction the Court makes here—that TRG Marketing is a fiduciary and TRG Administration is not—is, most likely, purely academic. As the undisputed facts of this case make clear, because of Crouse and Zanfei's poor accounting practices, it is difficult to conclude, at least financially, where TRG Marketing stopped and TRG Administration started. Moreover, given the relationship between the Defendants and because the Court finds that TRG Marketing, Crouse, and Zanfei are fiduciaries to the plan, any remedy fashioned by the Court will, in reality, affect all Defendants.

■ Since *Confer*, the Supreme Court explained that "ERISA ... defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan thus expanding the universe of persons subject to fiduciary duties—and to damages—under § 409(a)." *Mertens*, 508 U.S. at 262, 113 S.Ct. 2063. Other circuits, relying on *Mertens*, have specifically rejected *Confer*. For example, the Ninth Circuit explained:

> The gist of the Third Circuit's holding is that where a corporation is designated as the plan fiduciary, an officer's actions will not render that officer a fiduciary where those actions are ones with which the designated named fiduciary is chargeable. In other words, when the named fiduciary does not designate the officer, either explicitly or impliedly, as a fiduciary, the officer is shielded from personally becoming a fiduciary, so long as he acts within the corporate form. Insofar as *Confer* holds that a corporate officer or director acting on behalf of a corporation is not acting in a fiduciary capacity if the corporation is the named plan fiduciary, we disagree with the Third Circuit's conclusion.... This court has held corporate officers to be liable as fiduciaries on the basis of their conduct and authority with respect to ERISA plans.

*Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir.1995) (internal citations omitted). *See also Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 350–51 n. 7 (5th Cir.2003) (noting the Fifth Circuit's use of "the same functional approach as the Ninth Circuit in *Kayes*" and *Kayes'* express rejection of *Confer*). The Seventh Circuit subscribes to this broad functional approach in determining fiduciary status. *See Leigh v. Engle*, 727 F.2d 113, 134 n. 33 (7th Cir.1984) ("we think ERISA directs courts to look beyond ... formal authority with respect to the plan ... and to consider what real authority they had over plan investments by virtue of their having appointed [the plan administrators]."). Accordingly, the Court declines to adopt *Confer's* formal approach. Instead, the Court considers Crouse and Zanfei's actual authority when determining whether they were fiduciaries of the plan.

■ When viewed from the perspective of what Crouse and Zanfei actually did and could do with respect to the plan and plan assets, Crouse and Zanfei unquestionably were fiduciaries to the plan as a matter of law. First and foremost, Crouse and Zanfei were fiduciaries to the plan because they exercised authority and control over the plan's assets. In relevant part, ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he ... exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). The undisputed facts reveal that premiums paid by employers subscribing to the plan were deposited directly into TRG's corporate bank accounts and that Crouse and Zanfei exercised authority and control over those accounts. [Pl.'s Ex. B, ¶¶ 4, 5; Pl.'s Ex. G, pp. 60–62, 77–79; Pl.'s Ex. E, pp. 83, 86, 89–90; Plaintiff's Ex. F, p. 40]. Therefore, Crouse and Zanfei were fiduciaries because of their control over the plan's assets. *See LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2rd Cir.1997) (president of closely held corporation was fiduciary because exercised authority over plan assets by commingling plan assets with company's general assets and using plan assets to pay company's creditor's); *IT Corp. v. General American Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir.1997) ("'Any' control over disposition of plan money makes the person who has the control a fiduciary ...").

In addition, Crouse and Zanfei were fiduciaries to the extent they selected the plan's administrator. *See Engle,* 727 F.2d at 133 ("It is clear that [the defendants] are fiduciaries to the extent that they performed fiduciary functions in selecting and retaining plan administrators."); *Keach v. U.S. Trust Company, N.A.,* 234 F.Supp.2d 872, 882 (C.D.Ill.2002) (defendants "were undeniably fiduciaries with respect to the selection of U.S. Trust as successor trustee for the ESOP . . . ."). As noted above, Crouse's specific responsibilities with respect to the plan included finding and selecting third party service providers, negotiating contracts, and ensuring that the plan was implemented correctly. [Pl.'s Ex. E, pp. 32–33]. Moreover, Zanfei participated in the selection of the plan's third party administrator. [Pl.'s Ex. E, pp. 33–34; Pl.'s Ex. F, p. 32]. Accordingly, the Court finds that Crouse and Zanfei, in addition to TRG Marketing, were fiduciaries to the plan.

## C. The Defendants Breached Their Fiduciary Duties.

The Court must next determine whether TRG Marketing, Crouse and Zanfei breached any of the fiduciary duties owed by them pursuant to ERISA. The Secretary alleges several breaches: (1) violation of 29 U.S.C. § 1103(a) for failure to hold plan assets in trust; (2) violation of 29 U.S.C. § 1104(a)(1)(A) for failing to discharge their duties with respect to the plan "solely in the interest of the participants and beneficiaries;" (3) violation of 29 U.S.C. § 1106(b)(1) for dealing with plan assets for in their own interest; and (4) violation of 29 U.S.C. § 1104(a)(1)(B) for

imprudently administering plan assets. The Defendants do not seriously contest many of the Secretary's allegations. However, each alleged violation is discussed separately below.

### (1) Violation of 29 U.S.C. § 1103(a).

█ In relevant part, 29 U.S.C. § 1103(a) mandates that "all assets of an employee benefit plan *shall* be held in trust by one or more trustees. Such trustee or trustees shall be either named in the trust instrument or in the plan instrument . . . or appointed by a person who is a named fiduciary . . . ." (emphasis added). Defendants "admit that during the period in issue, they, by reason of ignorance, failed to hold the assets of the TRG Health Plan in trust." [Answer ¶ 5]. Accordingly, the Court finds that, as a matter of law, TRG Marketing, the named fiduciary, violated 29 U.S.C. § 1103(a) by failing to establish and hold plan assets in trust.[4]

### (2) Violation of 29 U.S.C. §§ 1104(a)(1)(A) and 1106(b)(1).

█ The Secretary next contends that Defendants violated their fiduciary duties under ERISA by using plan assets for their own interests in violation of §§ 1104(a)(1)(A) and 1106(b)(1). In relevant part, § 1104(a)(1)(A) requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." Similarly, § 1106(b)(1) prohibits a fiduciary from

4. The Court finds that only TRG Marketing violated ERISA's requirement to establish and hold plan assets in trust. When not otherwise provided for by the plan or trust instruments, the burden of establishing a trust—and naming a trustee—rests with the "named fiducia-

ry." Here, neither trust nor plan documents provide for the naming of a trustee. Moreover, while Crouse and Zanfei are ERISA fiduciaries in many respects, they are not "named fiduciaries" as defined by 29 U.S.C. § 1102(a)(2).

"deal[ing] with the assets of the plan in his own interest or for his own account." The Secretary maintains that the Defendants violated both provisions through a variety of transactions. In short, the Secretary argues that Defendants deposited plan assets into their corporate accounts, and then used those assets for their own corporate or personal benefit rather than that of the plan. The Court agrees with the Secretary on this point.

■ As the Secretary notes, the undisputed facts reveal that the Defendants made numerous expenditures from plan assets deposited in their corporate accounts. These expenditures, outlined above in more detail, funded trips overseas, expensive glassware, member distributions, commissions to TRG's enrollment brokers, food, beverage, and alcohol purchases, a charitable contribution, and a corporate line of credit. Even viewing these facts in a light most favorable to Defendants, there is no genuine issue here: Defendants violated their duty of loyalty to the plan and the prohibition against self-dealing. In interpreting the duty of loyalty codified by § 1104(a)(1)(A), the Seventh Circuit noted that "[d]eliberately favoring the corporate treasury when administering (as opposed to framing the terms of) a plan is inconsistent with the statute." *Frahm v. Equitable Live Assurance Society of the United States,* 137 F.3d 955, 959 (7th Cir. 1998). Here, Defendants did not merely favor the corporate treasury over the plan, they treated plan assets as the corporate treasury. Such actions are prohibited under ERISA. *See Yeseta v. Baima,* 837 F.2d 380, 386 (9th Cir.1988) (finding that withdraw of plan assets to pay company's "necessary operating expenses" violated 29 U.S.C. § 1104(a)(1)); *Leigh v. Engle,* 727 F.2d 113, 126–27 (7th Cir.1984) (use of plan assets to aid a party-in-interest in corporate takeover activities violated duty of loyalty); *Connors v. Paybra Mining Co.,* 807 F.Supp. 1242, 1246 (S.D.W.Va.1992) (corporate directors and officers violated fiduciary duty of loyalty by diverting plan assets to cover company expenses); *Wright v. Nimmons,* 641 F.Supp. 1391, 1402 (S.D.Tex.1986) ("Defendant has also blatantly disregarded his duty of loyalty by consistently treating the trust assets as if they were his own property subsequent to his acquisition of the corporations.").

■ Tellingly, Defendants admit that plan assets were deposited into corporate accounts. In fact, Defendants state:

During this time frame, TRG Marketing, TRG Administration, and Redwood, continued to conduct business as normal. Assuming the Plan framework to be ERISA compliant, Crouse and Zanfei, in their roles as corporate officers for those three companies, continued to conduct business in the best interest of the companies. Because Crouse and Zanfei were 50% owners of each company, they freely moved assets from one company to another as necessary. They did not establish a trust account for Plan assets because they were not aware of their duty to do so.

[Docket No. 44, pp. 5–6]. Such admissions alone require a finding that Defendants violated ERISA's duty of loyalty as Defendants acknowledge using plan assets in the best interest of their companies, rather than that of the plan. Moreover, Defendants do not argue that they did not make the alleged expenditures. Instead, Defendants dispute the *amount* of the expenditures. However, even if the Secretary is wrong in her calculation, it does not change the ultimate conclusion that Defendants violated their fiduciary duties man-

dated by ERISA.[5]

 Defendants also assert that:

several items ... fall into the realm of business expenses, such as the payment of commissions to those marketing the Plan. These Plan administrative costs are properly paid for with funds derived from the premiums paid by the Plan members. Whether these expenses are reasonable is a question best left to the ultimate fact-finder.

[Docket No. 44, p. 12]. Defendants' argument is again unpersuasive. While ERISA provides that a fiduciary may defray reasonable expenses of administering the plan, it does not allow a fiduciary to set its own administrative fee and directly collect those fees from plan assets. *See Patelco Credit Union v. Sahni,* 262 F.3d 897, 911 (9th Cir.2001) (holding that, "at the very least [the fiduciary] determined his own administrative fees and collected them himself from the Plan's funds, in violation of § 1106(b)(1)."). That is what occurred here. Moreover, ERISA's duty of loyalty requires that a fiduciary discharge his duties "solely in the interest of the *participants and beneficiaries* ... for the exclusive purpose of ... *providing benefits to participants and their beneficiaries.*" 29 U.S.C. § 1104(a)(1)(A) (emphasis added). Defendants' payment of commissions "to those marketing the Plan" conflicts with this requirement because it is not in the interest of current participants and beneficiaries. Instead, marketing of the plan seeks to add future participants and beneficiaries to the plan. Accordingly, payment of the commissions and member distributions out of plan assets violated

§§ 1104(a)(1)(A) and 1106(b)(1) as a matter of law.

**(3) Violation of 29 U.S.C. § 1104(a)(1)(B).**

 Finally, the Secretary alleges that Defendants also violated the "prudent man" standard of care articulated in 29 U.S.C. § 1104(a)(1)(B). In relevant part, the statute provides that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(B). The Secretary alleges that the Defendants failed to meet this standard by adopting "the premiums that SAI Plus had promised would be actuarially sound, and that constituted the only source of funding for participants' benefits under the TRG Health Plan, without any further review." [Docket No. 28, p. 24]. Essentially, the Secretary argues that the Defendants violated the prudent man standard by establishing and maintaining an employee welfare benefit plan that was not adequately funded because of an unsound premium rate structure and medical underwriting policy. [Docket No. 47, p. 13]. For their part, Defendants seem to confuse the duty of loyalty with the prudent man standard of care articulated by ERISA, arguing that Defendants' expenditures did not violate the duty of care.[6]

---

5. As explained below, the Court acknowledges that it would be inappropriate at the summary judgment stage to determine the specific amount to be restored to the plan. That determination is reserved for a later time.

6. "Section 1104(a)(1)(A) creates a duty of loyalty. Section 1104(a)(1)(B) creates a duty of care by requiring each plan's administrator to use 'the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and

[Docket No. 44, pp. 11–13]. However, as the Secretary notes in reply, she "does not allege that Crouse and Zanfei's expenditures violated ERISA's prudent person standard." [Docket No. 47, p. 7]. Instead, the Secretary's imprudent administration argument centers on the alleged underfunding of the plan due to faulty premium rates and underwriting policies—an argument that Defendants do not address. Nonetheless, for the reasons stated below, the Secretary's motion for summary judgment with respect to her § 1104(a)(1)(B) claim is denied.

In *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995), the Supreme Court explained that:

> ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. Nor does ERISA establish any minimum participation, vesting, or funding requirements for welfare plans as it does for pension plans.

(internal citation omitted). "Thus, it has long been the rule that an employer or plan sponsor does not act in a fiduciary capacity when *adopting*, modifying or terminating a welfare benefit plan." *Abbott v. Pipefitters Local Union No. 522 Hosp., Medical, and Life Ben. Plan*, 94 F.3d 236, 239 (6th Cir.1996) (emphasis added). Accordingly, Defendants did not breach their fiduciary duties when adopting the premium rate structure or underwriting policy because they were not acting in a fiduciary capacity when doing so. The Secretary's

motion for summary judgment in this respect is denied.

### D. Appropriate Remedy.

 As a result of Defendants' multiple violations of ERISA's fiduciary requirements, the Secretary requests that the Court issue "a permanent injunction enjoining the defendants from violating ERISA, removing them from any positions they may now hold with respect to the TRG Health Plan, and enjoining them from serving as fiduciaries of, or service providers to, any ERISA-covered employee benefit plan." [Docket No. 28, p. 26]. Moreover, the Secretary seeks an order requiring the Defendants to "make good to the TRG Health Plan $3,428,588.50 in plan losses" and to pay any remaining outstanding claims. [*Id.*]. For their part, Defendants recognize and acknowledge at least some liability for their actions, stating that "Crouse and Zanfei accept the responsibility of improperly utilizing. Plan assets as a result of their lack of knowledge and poor accounting" and "Crouse and Zanfei accept the responsibility of their actions and are willing to pay any outstanding claims and agree to never act as fiduciaries in the future." [Docket No. 44, pp. 13–14]. Given this concession, the egregiousness of Defendants' actions, and their oblivious disregard of ERISA's requirements, the Court agrees that such a remedy is appropriate. Accordingly, Defendants TRG Marketing, Crouse, and Zanfei are permanently enjoined from serving as fiduciaries, either directly or indirectly, to any ERISA-covered employee benefit plan. *See Chao v. Hochuli*, 244 F.Supp.2d 92, 99 (E.D.N.Y.2003) (permanent injunction of fiduciary was proper when plan funds were transferred to, and used for the benefit of,

familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.' " *Frahm v. Equitable*

*Life Assur. Soc. of U.S.,* 137 F.3d 955, 960 (7th Cir.1998).

a corporation partially owned by the fiduciary).

As noted above, the Secretary also seeks to enjoin Defendants from serving as service providers in the future. Defendants oppose this request arguing that the term "service provider" is unclear, that 29 U.S.C. § 1109 does not provide for the enjoining of non-fiduciary service providers, and that Defendants' actions, while misguided, do not constitute the egregious self-dealing that warrants this type of injunctive relief. The Court is unpersuaded by Defendants' arguments. First and foremost, as explained above, contrary to Defendants' arguments, Crouse and Zanfei were fiduciaries to the plan. In addition, the record is replete with instances where Defendants used plan assets for their own purposes in violation of ERISA's prohibition against self-dealing. Defendants seem to suggest that they should not be held accountable because of their "ignorance" or "lack of experience" or because their actions were "misguided." However, it is exactly this misguided ignorance that "demonstrate[s] such a fundamental misunderstanding of the ERISA statute, regulations, and case law as to require that [TRG Marketing, Crouse & Zanfei] have no further opportunity to subvert this important federal law." *Martin v. Feilen*, 965 F.2d 660, 673 (8th Cir.1992) (finding that district court abused its discretion in not further enjoining fiduciary from acting as a service provider). In short, regardless of the reason for Defendants' actions—nefarious or simple incompetence—the undisputed facts of this case require that TRG Marketing, Crouse, and Zanfei be enjoined from acting in any capacity to an ERISA-covered employee benefit plan. Ignorance is not bliss when serving as a fiduciary to an ERISA plan.

■ However, disputes remain that cannot be decided by the Court at the summary judgment stage. While the Court believes that an order requiring the Defendants to "make good" on plan losses and outstanding claims is appropriate, that figure cannot be definitively determined on the evidence currently before the Court. With respect to the outstanding claims, the parties agree that the final tally has yet to be determined. In passing, the Secretary suggests this figure be determined by an independent fiduciary. [Docket No. 28, p. 26]. Yet the Secretary provides no authority for such a measure and the Court questions whether it is appropriate to delegate that determination. Moreover, the Secretary acknowledges at least some dispute over the amount of plan assets improperly utilized by Defendants—or more accurately, the amount that Crouse and Zanfei have allegedly already paid back. [Docket No. 47, pp. 9–10]. Therefore, absent agreement by the parties, the Court declines to set this amount without a trial.

## V. Conclusion.

For the reasons set forth above, the Court makes the following rulings: (1) the Secretary's motion for summary judgment for violation of 29 U.S.C. § 1103(a) is GRANTED with respect to Defendant TRG Marketing and DENIED with respect to TRG Administration, Crouse, and Zanfei; (2) the Secretary's motion for summary judgment for violation of 29 U.S.C. §§ 1104(a)(1)(A) and 1106(b)(1) is GRANTED with respect to Defendants TRG Marketing, Crouse, and Zanfei and DENIED with respect to TRG Administration; and (3) the Secretary's motion for summary judgment for violation of 29 U.S.C. § 1104(a)(1)(B) is DENIED. Defendants TRG Marketing, Crouse, and Zanfei are permanently enjoined from further service as fiduciaries or service providers to any employee benefit plan subject to Title I of the Employee Retirement Income Security

Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., as amended. Further, Defendants TRG Marketing, Crouse, and Zanfei are liable for losses incurred by the plan as a result of their improper use of plan assets and for any outstanding claims filed by plan participants and beneficiaries under the plan. However, determination of the specific amount of liability is reserved for trial, absent a stipulation by the parties. To this end, the Court strongly encourages the parties confer to attempt to reach such an agreement prior to trial.

Finally, this cause is set for a pretrial conference at 3:30 p.m. on December 14, 2004 in Room 234, Birch Bayh Federal Building and United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana. Parties shall attend by counsel. The purpose of this conference is to set a trial date, discuss whether the current pending motions to compel [Docket Nos. 50, 54] have become moot as a result of this entry, and possible settlement. Counsel shall confer on these and other issues raised in this entry in advance of this conference.